IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**TERANCE SCOTT CARPENTER,**

        Petitioner,

    v.

**UNITED STATES OF AMERICA,**

        Respondent.

No. 3:08-cr-00049-MO

OPINION AND ORDER

**MOSMAN, J.**,

    After a jury trial, petitioner Terance Scott Carpenter was convicted on five counts: Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (d), Parent Permitting a Minor Child to Engage in Sexually Explicit Conduct in violation of 18 U.S.C. § 2251(b) and (d), Receiving Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(B) and 2252A(b)(1), Distributing Child Pornography in violation of 18 U.S.C. §2252A(a)(2)(B) and 2252A(b)(1), and Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2). On May 22, 2012, the Ninth Circuit Court of Appeals affirmed his conviction and sentence in a per curiam opinion. *See United States v. Carpenter*, 680 F.3d 1101 (9th Cir. 2012). Petitioner now moves to vacate or correct his sentence under 28 U.S.C. § 2255 [99]. For the reasons set forth below, I DENY petitioner's motion.

1 – OPINION AND ORDER

## BACKGROUND

At trial, the Government adduced evidence that petitioner had taken lewd and lascivious photos of his daughter as a child. (Tr. [95] at 175–88.) In addition, the Government proved that petitioner had collected over 4,200 images and 31 videos of child pornography. (Tr. [97] at 561.) Finally, the Government showed that petitioner accessed a file server named "Trashpile" and exchanged dozens of images of child pornography on June 15, 2006. (Tr. [94] at 133–35.)

Government agents traced petitioner's access to the Trashpile file server back to his apartment, and executed a search warrant at the apartment. (*Id.* [94] at 142.) The agents found three computers in the apartment, and later forensic analysis revealed thousands of images of child pornography stored on the computers. (Tr. [94] at 148; Tr. [95] at 204–05, 257, 259, 280, 295.) Images on the third computer, found on petitioner's desk, included explicit photographs of petitioner's daughter as a child. (Tr. [95] at 295.)

Although petitioner disputed this evidence at trial, the jury found it persuasive and, as a result, convicted petitioner on all counts. (Verdict [69]; Tr. [97] at 580–81.) The court then sentenced petitioner to a total of 50 years in prison. (Tr. [97] at 582–83.)

## DISCUSSION

In this motion, petitioner claims he suffered four types of ineffective assistance of counsel. First, petitioner claims that his counsel was ineffective during jury selection for failure to conduct meaningful voir dire and failure to challenge for cause several named jurors. (Mem. [123] at 5–17.) Second, petitioner claims that his counsel was ineffective for failure to file and pursue a motion to suppress evidence derived from the search of his apartment. (*Id*. [123] at 17–23.) Third, petitioner claims that his counsel was ineffective for failure to call two witnesses, Mr. Carpenter's deceased mother's cousin, Jerry Riggs, and an unidentified expert from TriMet, Mr.

Carpenter's former employer. (*Id*. [123] at 23–28.) Fourth, petitioner claims that his counsel was ineffective for failure to investigate potentially exculpatory evidence. (*Id*. [123] at 28–31.)

Also in this motion, petitioner alleges prosecutorial misconduct by the Government. (*Id*. [123] at 31–33.) Finally, petitioner makes a subject-matter jurisdiction challenge: He alleges that the Government never proved the child pornography moved across state lines, as required by 18 U.S.C. § 2251, prior to its amendment in 1998. (*Id*. [123] at 33–35.)

I.      **Legal Standards**

    A.      *Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, petitioner must show (1) that counsel's performance was "deficient" and (2) that the deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

To satisfy the deficiency prong, petitioner must demonstrate that his attorney's actions "were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Furthermore, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

To satisfy the prejudice prong, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

3 – OPINION AND ORDER

B.  *Evidentiary Hearing*

When a petitioner makes a §2255 motion, he is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). The Ninth Circuit "[has] characterized this standard as requiring an evidentiary hearing where 'the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'" *Id*. (quoting *Schaflander*, 743 F.3d at 717). Accordingly, a hearing must be granted "unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Schaflander*, 743 F.3d at 717.

## II.  Failure in Jury Selection

A.  *Deficiency*

Petitioner claims that his counsel was ineffective during jury selection for failure to conduct meaningful voir dire and failure to challenge for cause several named jurors. (Mem. [123] at 5–17.) According to petitioner, a handful of jurors harbored biases which affected the trial. Specifically, petitioner claims that Juror 3, a security guard, Juror 7, whose wife is a retired Portland Police Officer, and Juror 8, whose father was a member of the coast guard, had potential biases because of their ties to law enforcement. Petitioner also claims that Juror 4 was potentially biased because he lived in the same town as two witnesses of the prosecution, and that Juror 9 was potentially biased because his sister was sexually assaulted. He concludes by alleging that Juror 12 was potentially biased because he was also an employee of TriMet, petitioner's former place of employment. Petitioner argues that by failing to inquire further and

4 – OPINION AND ORDER

challenge these jurors for cause, his counsel's performance was deficient and prejudiced his case. (Mem. [123] at 12.)

Petitioner is incorrect. Counsel's choice to rely on a juror's commitment to fairness "merits deference as a tactical decision." *Wilson v. Henry*, 185 F.3d 986, 991 (9th Cir. 1999). Here, all of the jurors affirmed to the court that they would be fair and impartial. (Resp. [124] Exs. A–F; Tr. [94] at 37.) Relying on this commitment to fairness was a tactical decision, and petitioner's counsel was not deficient in making it. As a result, petitioner has failed to satisfy the first prong of the *Strickland* test.

### B.     *Prejudice*

Petitioner claims he suffered prejudice from the "seating of jurors with clear presumed and implied biases." (Mem. [123] at 5.) The Ninth Circuit has held that there is no prejudice under *Strickland* absent a showing that "[a] juror who harbored an actual bias was seated on the jury as a result of counsel's failure to voir dire . . . ." *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2011). Petitioner has the burden to show that he was prejudiced by the seating of jurors with an actual bias. *Id.* Specifically, he must show that their place on the jury had "an adverse effect on the defense," and not just "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

Petitioner claims that the law enforcement connections of Jurors 3, 7, and 8 constituted bias. (Mem. [123] at 10.) Though they did have ties to law enforcement, these jurors were not actual employees of the prosecuting agency, and ties to law enforcement, standing alone, are insufficient to show bias.

Petitioner claims that Juror 4 was biased because he lived in the same small town as petitioner's daughter and mother. (Mem. [123] at 10.) He asserts that there is a "strong

5 – OPINION AND ORDER

probability [Juror 4] could have known one or both witnesses or other persons related to them." (*Id.* [123].) In *Ybarra*, two of the empaneled jurors admitted to knowing the victim, and the jury panel was selected from a small town where news of the crime was highly publicized, yet those facts were insufficient for bias. *See Ybarra*, 656 F.3d at 993. There is even less potential for bias here. Therefore, petitioner's speculations as to Juror 4's familiarity with witnesses are insufficient to show bias.

Petitioner claims that Juror 9 was biased because his sister was the victim of a sexual assault. The court directly questioned Juror 9 as to whether he could be a fair and impartial juror, and he answered in the affirmative. (Tr. [94] at 51.) Nothing indicated bias, and his agreement to act with fairness and impartiality permitted him to serve on the jury. *See Ybarra*, 656 F.3d at 1001.

Lastly, petitioner claims that Juror 12 was biased because, like petitioner, she was an employee of TriMet. Petitioner argues that it is likely they crossed paths at some point during their employment or that Juror 12 became aware of the legal proceedings against him. There are reasons to be skeptical that either of these claims would be true. Juror 12 worked in TriMet's public relations department, while petitioner was a bus driver. (Tr. [94] at 57.) Moreover, TriMet employs approximately 2,400 people. (Resp. [124] at 12.) Petitioner's only evidence that Juror 12 became aware of the legal proceedings against him is that the TriMet public relations department is in close physical proximity to its legal department. (Reply. [129] at 5.) Further, petitioner offers no evidence, apart from speculation, that Juror 12 ever interacted with himself or a member of his family, much less that there was an experience that would lead to bias. Finally, Juror 12, like the other jurors, affirmed her ability to be fair.

In sum, petitioner has not made the required showing of prejudice under *Strickland*: He has not shown that any juror who harbored an actual bias was seated on the jury as a result of his counsel's alleged failure to conduct meaningful voir dire or challenge for cause.

## III.    Failure to Suppress Evidence

### A.    *Deficiency*

Petitioner claims that his counsel was ineffective for failure to pursue a motion to suppress incriminating evidence. This claim comes in two parts. The first is that his counsel failed to challenge an invalid search warrant for his apartment. The second is that his counsel failed to challenge the admissibility of a CD seized at a second apartment.

#### 1.    **Invalid Warrant**

Petitioner contends that his counsel was deficient by failing to challenge an invalid search warrant for his apartment. According to petitioner, this warrant was obviously invalid in two ways. First, he contends that the magistrate who issued the warrant, Judge Ashmanskas, was neither neutral nor detached because he had ruled against petitioner in an unrelated civil case. The Ninth Circuit has held that mere familiarity with a defendant or his prior cases is not enough to disqualify a magistrate. *See United States v. Heffington*, 952 F.2d 275, 279–80 (9th Cir. 1991). A magistrate judge may issue a warrant even when he has represented the defendant prior to the warrant. *See Id.* Though Judge Ashmanskas ruled against petitioner prior to issuing the warrant, there has been no showing of partiality. If anything, Judge Ashmanskas showed sympathy for petitioner during his civil case. (Resp. [124] Ex. H at 5.)

Petitioner's counsel was not ineffective for failing to pursue a motion to invalidate the search warrant on this ground. There would be no merit in the proposed motion, and "it is not

professionally unreasonable to decide not to file a motion so clearly lacking in merit." *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).

Second, petitioner contends that the warrant was obviously invalid because the warrant affidavit included internet service provider information. Petitioner cites statutes which are tailored to the interception of oral communication, alleging that this would have foreclosed the possibility of including internet service provider information in the warrant. He fails to recognize the clear authorization given in 18 U.S.C. § 2703(c)(2). As a result, this too would have been a motion without merit, and petitioner's counsel was within the range of professionally competent assistance in not raising it.

### 2. Seizure of the CD

Next, petitioner claims that the government illegally seized a CD of child pornography in June 2007, and that his counsel was ineffective for failing to challenge the admissibility of that evidence. (Mem. [123] at 20.) While interviewing petitioner's daughter and her mother, the Government received information about a CD containing child pornography that had not yet been recovered. (Tr. [95] at 177–178.) The Government learned that it was in another apartment that petitioner had previously occupied. (*Id.* [95] at 352.) The Government then visited Lisa Mclaughlin, who had moved into that apartment, and she handed the CD to the Government. (*Id.* [95] at 178–179.)

Petitioner claims that when the Government recovered this CD from Ms. McLaughlin, she was not authorized to consent to a search of the property. (Mem. [123] at 20.) However, petitioner did not have a reasonable expectation of privacy in an apartment he was not living in, and Ms. McLaughlin was free to consent to search and seizure of items from that apartment. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Therefore, a search warrant was not

8 – OPINION AND ORDER

necessary for the action taken.[1] As a result, petitioner's counsel was not deficient in choosing not to bring a motion to challenge the admissibility of this evidence.

    **B.**    *Prejudice*

As petitioner has failed to make a colorable showing of deficiency, I decline to consider the prejudice prong on this second claim for relief. *See Rios*, 299 F.3d at 805.

**IV.**    <u>Failure to Call Witnesses</u>

    **A.**    *Deficiency*

Petitioner argues that his counsel was ineffective in failing to call two witnesses: his deceased mother's cousin, Jerry Riggs, and an unnamed TriMet representative. Petitioner claims that Mr. Riggs would have established that others had access to the seized computers, thus raising doubt in regard to whether petitioner was the person responsible for the child pornography. (Mem. [123] at 24–25.) In addition, petitioner claims a TriMet representative theoretically could have used a TriMet tracking system to show that petitioner was away from his computer at the time of the illegal downloads. (*Id.* at 25.)

Petitioner does not substantiate these speculations. There is no evidence that these witnesses would have been available to testify on his behalf. Further, there is no reason to believe that these missing witnesses would have provided credible testimony to support petitioner's theory of the case.

Courts have rejected claims for ineffective assistance of counsel in cases where the defense counsel had much better reasons for calling a witness than did counsel here. In *Harrington v. Richter*, for example, the defense attorney chose not to use an expert to determine

---

[1] Ms. Mclaughlin, who had moved into the apartment some time before the search took place, had the authority to authorize a search. (Tr. [95] at 189.) But even a person who does not have actual authority to consent to the search may do so if they appear to a reasonable officer to have apparent authority. *See Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990).

9 – OPINION AND ORDER

whose blood was at the scene of the crime. ___ U.S. ___, 131 S.Ct. 770 (2011). The Supreme Court noted that the blood sample had the potential to prove defendant's theory, and that the testimony was real and available. *Id.* at 789. Still, the Court found that the decision not to call an expert did not make his counsel ineffective. *Id.* at 789–90. Similarly, in *Mickey v. Ayers*, the defense attorney retained a number of mental health experts that were prepared to testify, but he chose not to present a mental health defense at trial. 606 F.3d 1223, 1237–40 (9th Cir. 2010). The Ninth Circuit rejected the petitioner's claim for ineffective assistance of counsel, finding his attorney's decision to be a strategic one. *Id.*

These examples contrast sharply with petitioner's claim. Petitioner provides no concrete support for his assertion that these witnesses were available to testify or that they had something valuable to say. Petitioner cannot even identify a factual hook, such as a blood sample at the ready or mental health expert waiting in the wings. In the case of the mystery TriMet witness, I cannot even determine that such a person exists. The danger on this path is not far in the distance. Were it to succeed, any petitioner could simply create a post hoc theory of his innocence and blame his attorney for failing to call fortuitously absent or unidentified witnesses to corroborate it. Such speculation cannot prove deficient performance. Therefore, petitioner has failed to satisfy the deficiency prong of the *Strickland* test.

**B.    *Prejudice***

As petitioner has failed to make a colorable showing of deficiency, I decline to consider the prejudice prong on this second claim for relief. *See Rios*, 299 F.3d at 805.

V.   **Failure to Investigate**

    A.   *Deficiency*

In his final claim of ineffective assistance of counsel, petitioner contends that his counsel failed to investigate potentially exculpatory evidence and a probable alibi defense. (Mem. [123] at 28.) Petitioner references purported records of his previous employer, TriMet, that he claims would have placed him outside of his home at the time of the illegal downloads. He faults his counsel for not obtaining these records for his benefit.

The decision not to pursue a defense that would be "fruitless or even harmful . . . may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. At trial, the Government adduced evidence that the Trashpile file server was accessed at 11:56 a.m. on June 15, 2006. (Tr. [94] at 92.) Anticipating petitioner's theory that he was in Nevada at the time these downloads were made, the Government produced records showing that petitioner had worked his shift at TriMet on June 15, 2006, clocking in approximately three hours after the Trashpile file server was accessed. (Tr. [95] at 324–26.) These already produced TriMet records contradicted petitioner's theory that other TriMet records would have placed him outside of his home at the time the illegal downloads were made. Consequently, any additional investigation would have been fruitless. It was therefore within the wide range of professionally competent assistance for petitioner's counsel to choose not to pursue this theory.

    B.   *Prejudice*

Petitioner claims that the investigation would have revealed evidence that he was working at TriMet when the Trashpile file server was accessed. However, the TriMet records the Government produced showed that this was not the case. (*Id.* [95].) Furthermore, this potential evidence would have had to overcome a substantial quantity of child pornography found on his

11 – OPINION AND ORDER

computers and CDs. This collection included sexual photographs of his daughter (in which he occasionally featured) and his daughter's own testimony against him. With proof that petitioner already owned such a vast and disturbing collection on the same computers, the chance that a fact-finder would conclude that he was not responsible for the rest is minimal. In light of this evidence, petitioner cannot say that the outcome would have been different had his counsel investigated. Therefore, petitioner has not demonstrated prejudice under *Strickland*.

## VI.     Prosecutorial Misconduct

Apart from petitioner's claims of ineffective assistance of counsel, he also alleges prosecutorial misconduct. Specifically, petitioner claims that the prosecuting attorney "deliberately deceived the jury and the Court" by misstating facts in his opening and closing arguments. (Mem. [123] at 31.) Petitioner did not raise this claim at trial or on direct appeal, and cannot raise them at this point. "A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default." *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003).

## VII.    Subject-Matter Jurisdiction

Petitioner claims that, prior to statutory changes to 18 U.S.C. § 2251 in 1998, his actions covered in counts 1 and 2 did not fall under the jurisdiction of the court.[2] Petitioner raises a similar claim for his actions covered by counts 3 and 4, alleging that the court had no jurisdiction over his acts prior to a statutory change to 18 U.S.C. § 2252A.

---

[2] Petitioner raises this claim for the first time here. However, "[j]urisdictional issues will ordinarily be considered on appeal regardless whether they are raised in the trial court." *United States v. Nukida*, 8 F.3d 665, 668–69 (9th Cir. 1993).

12 – OPINION AND ORDER

Before October 30, 1998, 18 U.S.C. § 2251 (a) and (b)[3] required proof that the offender knew or had reason to know that the visual depiction of child pornography would be transported in interstate commerce or mailed, or that it had already been transported in interstate commerce or mailed. 18 U.S.C. § 2251(a), (b) (1994). After October 30, 1998, Congress amended the statute to cover conduct, "if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2251(a), (b).

Petitioner was convicted of taking pornographic photographs of his daughter from 1997 to 2003. He claims the court did not have jurisdiction over the photographs taken before the 1998 revision because he did not intend to transport the photographs in interstate commerce, nor had they actually been transported in interstate commerce before the change. (Mem. [123] at 33.)

However, the Government charged petitioner under the post-1998 version of 18 U.S.C. § 2251. (Indict. [37] at 1–2.) As noted, the revised statute has no requirement that the photographs themselves travel in interstate commerce. Instead, the revised statute requires only that the images be produced using materials that have traveled in interstate commerce. At trial, the Government adduced evidence that the pornographic images of petitioner's daughter were produced using materials, such as cameras and computers, that had traveled in interstate and foreign commerce. (Tr. [97] at 517.) Under the revised statute, this is sufficient to establish jurisdiction.

Petitioner's daughter identified one series of photographs that was taken before 1998, but all remaining evidence was created thereafter. (Tr. [95] at 176–87.) Though the pre-1998 evidence might support a verdict standing alone, the images taken after 1998 are far more

---

[3] Counts 1 and 2 against petitioner were brought under these statutes. Section (a) pertains to the production of child pornography, and section (b) pertains to permitting a minor child to engage in sexually explicit conduct.

13 – OPINION AND ORDER

graphic. (Tr. [95] at 173, 179–81.) Therefore, I find that the pre-1998 evidence was not essential to the jury's verdict.

Finally, petitioner claims that the charges in counts 3 and 4 were defective for lack of subject-matter jurisdiction. However, the relevant exchange of child pornography occurred on June 15, 2006, and, unlike his parallel 18 U.S.C. § 2251 subject-matter jurisdiction challenge, the revision of 18 U.S.C. § 2252A pre-dates the exchange. *See* 18 U.S.C. § 2252A (2000). Therefore, petitioner's subject-matter jurisdiction claims are meritless.

## CONCLUSION

For the foregoing reasons, I DENY petitioner's motion to vacate or correct sentence under 28 U.S.C. § 2255 [85]. I also DENY petitioner's request for a certificate of appealability because he has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this   23rd   day of July, 2013.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

14 – OPINION AND ORDER